## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **MILTON LEE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 02-3428-KHV** |
| **(FNU) LARKIN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Plaintiff, an inmate at the El Dorado Correctional Facility in El Dorado, Kansas, brings suit against (fnu) Larkin, (fnu) Kerr and (fnu) Higgins. Under 42 U.S.C. § 1983, plaintiff alleges that by using excessive force on June 22, 2002 and August 2, 2002, defendants violated his rights under the Eighth Amendment to be free from cruel and unusual punishment. This matter is before the Court on Defendants' Motion For Summary Judgment (Doc. #93) filed September 23, 2004; State Defendants' Motion To Strike Plaintiff's Surreply (Doc. #101) filed November 4, 2004; plaintiff's Motion For Leave To File Surreply (Doc. #105) filed November 23, 2004; and Defendants' Motion For Leave To Supplement Their Motion For Summary Judgment Out Of Time (Doc. #108) filed December 14, 2004. As a preliminary matter, the Court overrules defendants' motion to strike plaintiff's surreply and sustains plaintiff's motion for leave to file a surreply. For reasons set forth below, the Court sustains defendants' motion for summary judgment in part and overrules defendants' motion for leave to supplement their motion out of time.

## **Summary Judgment Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape

-2-

summary judgment in the mere hope that something will turn up at trial." <u>Conaway v. Smith</u>, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson</u>, 477 U.S. at 251-52.

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Rule 56(e) also requires that "copies of all papers or parts thereof referred to in an affidavit be attached thereto or served therewith." To enforce this rule, the Court ordinarily does not strike affidavits but simply disregards those portions which are not shown to be based upon personal knowledge or otherwise do not comply with Rule 56(e). <u>Maverick Paper Co. v. Omaha Paper Co., Inc.</u>, 18 F. Supp.2d 1232, 1234-35 (D. Kan. 1998).

In *pro se* prisoner litigation, the Tenth Circuit endorses the completion and filing of a "Martinez report" where the prison constructs an administrative record which details the factual investigation of the events at issue. <u>See</u> <u>Martinez v. Aaron</u>, 570 F.2d 317, 319 (10th Cir. 1978). The Martinez report is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence. <u>Green v. Branson</u>, 108 F.3d 1296, 1302 (10th Cir. 1997). The *pro se* prisoner's complaint, when sworn and made under penalty of perjury, is also treated as an affidavit; like the Martinez report, it serves as evidence for a summary judgment determination. <u>See</u> <u>id.</u>

<u>**Analysis**</u>

**I.      Excessive Force On June 22, 2002**

Defendants assert that plaintiff has not exhausted administrative remedies on his claim of excessive

force on June 22, 2002.[1]  The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, imposes a

mandatory exhaustion requirement for inmates who bring Section 1983 claims regarding prison conditions.

Specifically, Section 1997e(a) provides that:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this
> title, or any other Federal law, by a prisoner confined in any jail, prison, or other
> correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory; the Court is not authorized to dispense

with it.  <u>See</u> <u>Beaudry v. Corr. Corp. of Am.</u>, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003) (citations

omitted).

Plaintiff maintains that he exhausted administrative remedies by filing an inmate grievance on March

14, 2004, nearly two years after the alleged incident.  The prison rejected the grievance as untimely under

K.A.R. § 44-15-101b, which requires that an inmate file a grievance within 15 days of discovery of the

event giving rise to the grievance.  In <u>Ross v. County of Bernalillo</u>, 365 F.3d 1181 (10th Cir. 2004), the

Tenth Circuit held that filing an untimely grievance does not satisfy the PLRA exhaustion requirement.  <u>Id.</u>

at 1185-86.  In so holding, the Tenth Circuit stated that "[a]llowing prisoners to proceed in federal court

simply because they have filed a time-barred grievance would frustrate the PLRA's intent to give prison

officials the opportunity to take corrective action that may satisfy inmates and reduce the need for litigation,

---

[1]       Defendants do not argue that plaintiff has failed to exhaust administrative remedies on his
claim of excessive force on August 2, 2002.

to filter out frivolous claims, and to create an administrative record that would facilitate subsequent judicial review." Id. at 1186.  Under Ross, plaintiff has not exhausted administrative remedies on his claim of excessive force on June 22, 2002.

In Ross, the Tenth Circuit applied a total exhaustion rule, stating that if a prisoner files a complaint which contains one or more unexhausted claims, "the district court ordinarily must dismiss the entire action without prejudice." Id. at 1190.  In a later unpublished opinion, the Tenth Circuit stated that it also follows "that the district court may permit an inmate who has filed a mixed complaint in a § 1983 complaint to dismiss voluntarily his unexhausted claims and to proceed only on those he has exhausted." West v. Kolar, No. 03-6265, 2004 WL 1834634, at *2 (10th Cir. Aug. 17, 2004); see also Wolters v. Conner, No. 03-3251-KHV, 2004 WL 2496699, at *3 (D. Kan. Nov. 4, 2004).  In this case, plaintiff's first complaint only alleged excessive force on August 2, 2002.  See Complaint (Doc. #1) filed December 9, 2002.  On August 6, 2004, plaintiff filed an amended complaint which added the claim for excessive force on June 22, 2002.  Under these circumstances, the Court will allow plaintiff to voluntarily dismiss the claim related to excessive force on June 22, 2002 and proceed only on the claim related to excessive force on August 2, 2002.  On or before **January 19, 2005,** plaintiff may voluntarily dismiss the claim related to excessive force on June 22, 2002.  If plaintiff fails to do so, without further notice or order of the Court, the Clerk shall dismiss all of plaintiff's claims without prejudice for failure to exhaust administrative remedies.

## II.    Excessive Force On August 2, 2002

Defendants seek qualified immunity on plaintiff's claim for excessive force on August 2, 2002. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In the

excessive force context, the qualified immunity defense protects officers from "reasonable mistakes as to

the legality of their actions." Saucier v. Katz, 533 U.S. 194, 206 (2001).  The Supreme Court has noted

as follows:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.  It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.  An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances.  If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

Id. at 205.

In determining whether defendants are entitled to qualified immunity, the Court first determines

whether taken in the light most favorable to plaintiff, the alleged facts show that defendants violated a

constitutional right.  Id. at 200-01.  If so, the Court determines whether the constitutional right was clearly

established in light of the specific context of this case.  Id. at 201.  If plaintiff satisfies this two-part burden,

defendants must demonstrate that no material issues of fact remain as to whether their actions were

objectively reasonable in light of the law and the information they possessed at the time.  See Martin v. Bd.

of County Comm'rs, 909 F.2d 402, 405 (10th Cir. 1990).  If defendants make such a showing of

objective reasonableness, they are entitled to summary judgment unless plaintiff can demonstrate a factual

dispute which is relevant to defendants' immunity claim.  See id.

In order to prove an Eighth Amendment violation, plaintiff must show that defendants used

excessive force which resulted in "unnecessary and wanton infliction of pain."  Hudson v. McMillian, 503

U.S. 1, 5 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).  While prison officials must

occasionally resort to physical force to maintain or restore institutional order, they must also balance the institutional interest in order against the risk of harm to the inmate. See Hudson, 503 U.S. at 5. The core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 6; see Mitchell v. Maynard, 80 F.3d 1433, 1440 (10th Cir. 1996).

Construed in the light most favorable to plaintiff, the record support an inference that defendants' actions violated the Eighth Amendment.[2] Plaintiff presents sworn evidence of the following facts: On August 2, 2004, while plaintiff was restrained in handcuffs and waist chains, Larkin kicked his legs out from under him and caused him to fall on his head. Larkin then made racial slurs and repeatedly pounded plaintiff's head into the floor which caused it to bust open and bleed, requiring three stitches. During the attack, Kerr and Higgins twisted plaintiff's legs to inflict severe pain and injury. See Complaint (Doc. #1) filed December 9, 2002 and Affidavit To Support Demand Trial By Jury (Doc. #28) filed March 12, 2004. Defendants maintain that plaintiff acted aggressively toward staff and that they used the minimum amount of force necessary to control him. See Brief In Support Of Defendants' Motion For Summary Judgment ("Defendants' Brief") (Doc. #94) filed September 23, 2004 at 6-7, 12-13, 15-16.[3] In ruling on

---

[2]     Defendants argue that plaintiff's response does not comply with D. Kan. Rule 56.1(b) because it does not cite the record or specifically state the number of defendants' fact paragraph that he disputes. The Court, however, recognizes that *pro se* litigants should not succumb to summary judgment merely because they fail to comply with the technical requirements involved in defending such a motion. See Woods v. Roberts, No. 94-3159, 1995 WL 65457, at *2 (10th Cir. Feb. 17, 1995); Hass v. U.S. Air Force, 848 F. Supp. 926, 929 (D. Kan. 1994). The Court has therefore diligently searched the record to determine whether genuine issues of material fact preclude the entry of summary judgment for defendants.

[3]     Specifically, defendants present the following version of the facts: While they were escorting
(continued...)

-7-

defendants' motion for summary judgment, however, the Court must construe the record in the light most favorable to plaintiff.  Deepwater Invs., 938 F.2d at 1110.  Under this standard, the record indicates that while defendants may have been justified in taking plaintiff down after he made an aggressive move toward a staff member, it was unnecessary to pound plaintiff's head into the floor or to twist his legs to inflict pain. Plaintiff has therefore sufficiently alleged that defendants violated a constitutional right.

Because plaintiff alleges a constitutional violation, the Court must determine whether the constitutional right was clearly established in light of the specific context of this case.  Saucier, 533 U.S. at 201-02.  Ordinarily, in order for plaintiff to demonstrate that a law is clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992); see Anderson v. Creighton, 483 U.S. 635, 640 (1987) (right is clearly established if the contours of right are sufficiently clear so that reasonable official would understand that what he is doing violates that right).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

---

[3](...continued)

plaintiff to and from the medical clinic on August 2, 2002, he displayed abusive language and threatened staff.  Larkin, Kerr and Higgins repeatedly told plaintiff to stop his threatening behavior.  On the way back from the clinic, plaintiff told staff member Rachelle Vanway that she had a "fat ass."  Vanway told Lee to watch his mouth.  Lee replied "shut up you fucking bitch" and turned his head and body in an aggressive manner toward Vanway.  Larkin interpreted the move as a dangerous act of aggression and took Lee to the floor.  Kerr and Higgins secured Lee's legs.  Lee suffered a cut to his forehead which required three stitches.  He received no injuries to his legs.

Defendants assert that they are entitled to qualified immunity because they subjectively believed that their actions were justified under the circumstances.  See Defendants' Brief at 13.  This argument ignores the Supreme Court's requirement that an officer's belief must be objectively reasonable.  See Saucier, 533 U.S. at 205-06.  Here, the record supports an inference that while plaintiff was shackled at the wrists and waist, defendants took him to the ground, made racial slurs and repeatedly pounded his head into the floor and twisted his legs to inflict pain.  The record contains no evidence that plaintiff fought back or that defendants reasonably believed that he would do so.  Under these circumstances, construing the facts in the light most favorable to plaintiff, the law is clearly established that defendants' alleged actions violated plaintiff's rights under the Eighth Amendment.  See Hudson, 503 U.S. at 6-10 (allegations that officials held, punched and kicked handcuffed and shackled inmate sufficiently stated Eighth Amendment violation); Mitchell, 80 F.3d at 144-41 (beating shackled inmate with night sticks while shouting racial epithets violated Eighth Amendment); cf. Saucier, 533 U.S. at 205 (officer would be justified in using more force than needed if officer reasonably believed that suspect was likely to fight back).

Defendants have not conclusively shown that their actions were objectively reasonable in light of the law and the information which they possessed.  See Martin, 909 F.2d at 405.  Accordingly, defendants are not entitled to qualified immunity on plaintiff's excessive force claim regarding events which took place on August 2, 2002.

Defendants maintain that they are entitled to summary judgment on the merits of plaintiff's claim.  As discussed above, however, construed in the light most favorable to plaintiff, the record supports an inference that defendants violated plaintiff's rights under the Eighth Amendment.  Defendants are not entitled to summary judgment on the merits of plaintiff's claim.

Finally, defendants seek leave to supplement their motion for summary judgment, which they filed on September 23, 2004, to add recently discovered evidence.  Specifically, defendants ask the Court to consider the results of an independent investigation which was conducted in August of 2002 at the direction of the acting warden of the El Dorado Correctional Facility.  See Exhibit B to Memorandum In Support Of Defendants' Motion For Leave To Supplement Their Motion For Summary Judgment Out Of Time (Doc. #109) filed December 14, 2004.  Defense counsel states that during a witness interview on December 2, 2004, he learned that an investigator from the central office of the Kansas Department of Corrections ("KDOC") might have investigated the incident which occurred on August 2, 2004.  After searching KDOC records, counsel learned that Steve Gillespie, former director of investigations, investigated the incident and prepared a report which concluded that defendants had acted appropriately and had not violated KDOC policies or procedures.  Counsel states that he did not discover the report earlier because it was prepared two years ago and Gillespie no longer works for KDOC.  Counsel does not state why he did not interview the witness before December 2, 2004, however, or why he did not search KDOC records earlier.  Furthermore, counsel suggests no reason why Gillespie's opinions would assist the Court in resolving the issues presented in defendant's motion for summary judgment.

On this record, defendants have not provided sufficient grounds to supplement their motion for summary judgment.  Dispositive motions were due September 24, 2004.  See Scheduling Order (Doc. #39) filed April 28, 2004 at 6.  Defendants state no valid reason for their failure to discover the report prior to that time.  Trial in this case is set for February 1, 2005.  If the Court were to allow the proposed supplementation, it would need to give plaintiff an opportunity to respond, which would unduly delay trial.

-10-

Moreover, even if the Court considered the new evidence, its ruling would remain the same. Plaintiff's motion to supplement their motion for summary judgment is therefore denied.

**IT IS THEREFORE ORDERED** that Defendants' Motion For Summary Judgment (Doc. #93) filed September 23, 2004 be and hereby is **SUSTAINED in part**. On or before **January 19, 2005,** plaintiff may voluntarily dismiss the claim related to excessive force on June 22, 2002. If plaintiff fails to do so, without further notice or order of the Court, the Clerk shall dismiss all of plaintiff's claims without prejudice for failure to exhaust administrative remedies.

**IT IS FURTHER ORDERED** that State Defendants' Motion To Strike Plaintiff's Surreply (Doc. #101) filed November 4, 2004 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that plaintiff's Motion For Leave To File Surreply (Doc. #105) filed November 23, 2004 be and hereby is **SUSTAINED.**

**IT IS FURTHER ORDERED** that Defendants' Motion For Leave To Supplement Their Motion For Summary Judgment Out Of Time (Doc. #108) filed December 14, 2004 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that the status conference set for January 10, 2005 is canceled.

**IT IS FURTHER ORDERED** that if plaintiff timely dismisses the claim related to excessive force on June 22, 2002, the Court will hold a telephone status conference on Tuesday, **January 25, 2005, at 10:00 a.m.,** and the case will remain set for trial on **February 1, 2005.**

Dated this 7th day of January, 2005 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-11-